IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

AMERICAN MOTORISTS )
INSURANCE COMPANY, )
 )
Plaintiff, )
 )
vs. ) Case No. CV606-24
 )
LPS CONSTRUCTION COMPANY; )
WALLACE H. WIGGINS, JR.; )
CLAIRE E. WIGGINS; and )
JOSEPH C. WIGGINS, )
 )
Defendants. )
_____)

## O R D E R

Before the Court is Plaintiff American Motorists Insurance Company's Motion for Summary Judgment. (Doc. 43.) After careful consideration, Plaintiff's Motion is **GRANTED**.

### BACKGROUND

The above-captioned action arises out of a General Indemnity Agreement entered into between Plaintiff American Motorists Insurance Company ("American Motorists") and Defendants LPS Construction Company ("LPS"), Wallace Wiggins, Jr., Claire Wiggins, and Joseph Wiggins (collectively "the Indemnitors"). On February 12, 2002, American Motorists issued numerous surety bonds on behalf of LPS. (Doc. 43, Attach. 1 at 4; Doc. 45, Exs. A-F.)

In consideration for the bonds' issuance, the Indemnitors executed a General Indemnity Agreement ("the Indemnity Agreement") under which they agreed to indemnify and hold harmless American Motorists from any and all loss sustained or incurred by reason of

its having executed bonds on LPS Construction's behalf. The contract provided that "[i]n the event of payments by the Surety, Indemnitors agree to accept the voucher or other evidence of such payments as prima facie evidence of the fact and extent of the liability of Indemnitors to Surety in any demand, claim or suit by Surety against Indemnitors." (Doc. 43, Attach. 1 at 2.)

American Motorists has received numerous claims against these bonds. In addition, lawsuits have been filed against LPS and/or American Motorists by several of LPS's subcontractors and suppliers. These subcontractors and suppliers claim that American Motorists owes them money for labor and materials supplied to and incorporated into the various LPS bonded projects. Upon receipt of these claims, American Motorists informed LPS of the claims and notices and solicited its positions, defenses, and information regarding each claim. As of October 2006, American Motorists had incurred losses, costs, expenses, and attorney's fees totaling $1,437,828.41 as a result of the bonds issued on July 19, 2006. It alleges that this sum continues to grow.

American Motorists claims that it has made repeated demands upon the Indemnitors pursuant to the Indemnity Agreement for payment of the losses incurred and deposit of collateral equal to the reserve established by American Motorists to cover pending claims. It contends that the Indemnitors have refused to make any payments or deposit any of the collateral demanded.

On March 6, 2006, American Motorists filed this action against the Indemnitors. After the completion of discovery, American Motorists filed a motion for summary judgment on its claims. Defendants Claire and Joseph Wiggins have responded. Although they admit that they have failed to indemnify American Motorists, these Defendants do not dispute that agreements of indemnity are enforceable in the state of Georgia, nor do they contest the fact that they signed the agreements. Rather, they argue that summary judgment should not be granted because genuine issues of material fact remain with respect to lack of consideration, fraud, the validity of the bonds, and good faith. Defendants Wallace Wiggins and LPS have not responded.[1]

## ANALYSIS

I. <u>Standard of Review</u>

Summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>,

---

[1] Under Local Rule 7.5, failure to respond within the applicable time period shall indicate that there is no opposition to a motion.

475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986) (citing Fed. R. Civ. P. 56 advisory committee notes). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). The substantive law governing the action determines whether an element is essential. DeLong Equip. Co. v. Wash. Mills Abrasive Co., 887 F.2d 1499, 1505 (11th Cir. 1989).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. The burden then shifts to the nonmovant to establish, by going beyond the pleadings, that there is a genuine issue as to facts material to the nonmovant's case. Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). The Court must review the evidence and all reasonable factual inferences arising from it in the light most favorable to the nonmovant. Matsushita, 475 U.S. at 587-588. However, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material

facts." Id. at 586. A mere "scintilla" of evidence, or simply conclusory allegations, will not suffice. See, e.g., Tidwell v. Carter Prods., 135 F.3d 1422, 1425 (11th Cir. 1998). Nevertheless, where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a genuine issue of material fact, then the Court should refuse to grant summary judgment." Barfield v. Brierton, 883 F.2d 923, 933-34 (11th Cir. 1989).

II. American Motorists' Motion for Summary Judgment

In response to American Motorists' Motion for Summary Judgment, Defendants Claire and Joseph Wiggins contend that genuine issues of material fact exist with respect to lack of consideration, fraud, the validity of the bonds, and good faith. After careful consideration, the Court finds no such issue of material fact.

A. The Contract

First, Claire Wiggins argues that the Indemnity Agreement is void and unenforceable because of (1) lack of consideration, (2) Plaintiff's failure to perform dependent covenants, and (3) estoppel. Additionally, she argues that "the claims of the Plaintiff are barred by reason of the acts of the Plaintiff by which the obligations of the Defendant, if any, under the contract, have ceased." (Doc. 19 at 1-2.) With regard to consideration, the Indemnity Agreement provides that American Motorists would issue

5

the bonds on behalf of LPS in consideration for the Indemnitors' promise to cover losses. This is sufficient evidence of consideration. Furthermore, Claire Wiggins fails to specify: any unfulfilled dependent covenants, any acts of American Motorists which would excuse Defendants' performance, or any reason or action which would estop American Motorists from recovering under its claims. Accordingly, Claire Wiggins's first efforts to invalidate the Indemnity Agreement are unavailing.

B. <u>Fraud</u>

Next, Defendants Claire and Joseph Wiggins contend that they were fraudulently induced into signing the Indemnity Agreement by the statements and actions of Wallace Wiggins and Bradford W. Bush. In response, American Motorists argues that Defendants are precluded from their defense of fraud by the "read or perish" rule, which provides that one having the capacity and the opportunity to read a written contract cannot then rely on a defense of fraud in the procurement of his signature to the instrument. <u>Citizens Bank, Vienna v. Bowen</u>, 169 Ga. App. 896, 315 S.E.2d 437 (1984). Defendants argue that their admitted failure to read the Indemnity Agreement was excused by certain exceptions to that rule.

Joseph Wiggins contends that Wallace Wiggins told him that he was in a hurry and did not have time for Joseph to read the Indemnity Agreement before signing. However, "where one who can read signs a contract without apprising himself of its contents,

6

otherwise than by accepting representations made by the opposite party, with whom there exists no fiduciary or confidential relation, he can not defend an action based on it unless it should appear that at the time he signed it some such emergency existed as would excuse his failure to read it, or that his failure to read it was brought about by some misleading artifice or device perpetrated by the opposite party, amounting to actual fraud such as would reasonably prevent him from reading it." Morrison v. Roberts, 195 Ga. 45, 45, 23 S.E.2d 164 (1942). "Fraud which would relieve a party who can read must be fraud which prevents him from reading." Ansley v. Forest Servs., 135 Ga. App. 745, 748, 218 S.E.2d 914 (1975).

After a review of the record, the Court finds no evidence showing that Joseph Wiggins was prevented from reading the documents he signed. While he contends that the pages of the Agreement were flipped directly to the signature page, he could have read the documents if he had so requested. Even if Wallace Wiggins was in a hurry to have the documents signed, there is nothing to show that this presented such an emergency as to prevent Joseph Wiggins from reading the papers before he signed. See Citizens Bank, 169 Ga. App. at 898; Lewis v. Foy, 189 Ga. 596, 599, 6 S.E.2d 788 (1940); Morgan v. Denton, 28 Ga. App. 88, 110 S.E. 328 (1921).

7

Fraud and reasonable diligence are normally questions for the jury. See Robi v. Goldstein, 100 Ga. App. 606, 112 S.E.2d 165 (1959); B.E. Robuck, Inc. v. Walker, 212 Ga. 621, 94 S.E.2d 696 (1956). However, Defendants have not presented any evidence of emergency, artifice, or trickery which prevented them from reading the Agreement before signing. Id. Accordingly, Defendants' arguments do not raise a genuine issue of material fact.

Claire and Joseph Wiggins also argue that they shared a confidential relationship with Wallace Wiggins. The existence of this relationship is not relevant to American Motorists' motion. Although Wallace Wiggins may have been in a confidential relationship with the Defendants, they have failed to show that they were in such a relationship with an agent of American Motors.

Moreover, Joseph Wiggins has not offered any evidence of any actions on the part of American Motorists which would constitute fraud. Although he claims that Mr. Bradford Bush misled him while acting as a representative of American Motorists, Joseph Wiggins admits that he did not have any discussions with anyone from American Motorists before Wallace Wiggins brought the Indemnity Agreement to him to sign. (Joseph Wiggins Dep. at 16-17.)

Accordingly, Defendants Joseph and Claire Wiggins have not shown such fraud on the part of American Motors so as to excuse their failure to read the contract.

C. <u>The Validity of the Bonds</u>

Joseph and Claire Wiggins also assert that an issue remains as to the validity of the bonds. However, they have failed to produce any evidence which suggests that the bonds are invalid. Instead, it appears that their argument is based entirely on American Motors failure to produce executed copies of the bonds.

The Georgia Court of Appeals addressed the question of whether a surety is required to produce the bonds it issued on behalf of a principal in a case against its indemnitors for indemnity. <u>See Anderson v. United States Fidelity & Guaranty Co.</u>, 267 Ga. App. 624, 600 S.E.2d 712 (2004). The Court specifically rejected the indemnitors' arguments that [the surety's] failure to produce the underlying bonds was fatal to its claim. It held that the indemnity agreement, not the bonds, was at issue in the case and ruled that the surety's affidavit confirming that [the surety] issued bonds on behalf of [the principal] was sufficient. <u>Id.</u> at 629. In accordance with the <u>Anderson</u> decision, the affidavits in this case confirming that American Motorists issued bonds on behalf of LPS are sufficient evidence of the bond's validity.

D. <u>Good Faith</u>

Finally, Claire Wiggins argues that an issue remains as to whether American Motorists acted in good faith in spending more than $1,400,000 to cover losses, costs, expenses, and attorney's fees. Again, however, she has failed to offer any evidence to

9

support these conclusory allegations. To the contrary, the Indemnity Agreement states that "vouchers or other evidence of . . . payments" constitute prima facie evidence of the fact and the extent of the liability. Barring any evidence of bad faith on the part of American Motorists, it is entitled to indemnification on the entire sum requested.

## CONCLUSION

After careful consideration, Plaintiff American Motorists' Motion for Summary Judgment is **GRANTED**. The Clerk of Court is **DIRECTED** to **ENTER JUDGMENT** for American Motorists and against Defendants LPS Construction Company, Inc., Wallace H. Wiggins, Jr., Claire E. Wiggins, and Joseph C. Wiggins, jointly and severally, in the amount of $1,437,828.41. American Motorists is awarded prejudgment simple interest at a rate of 8.25% per annum. The following claims remain pending: Joseph Wiggins's cross-claims against Claire Wiggins's, Claire Wiggins's cross-claims against Wallace Wiggins's, and Joseph Wiggins's counterclaims against American Motorists.

SO ORDERED, this 22ND day of August, 2007.

WILLIAM T. MOORE, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA